IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| TAMARA S. HENDRICKS,<br>PLAINTIFF | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:08-CV-621-Y |
| | § | |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY,<br>DEFENDANT. | § | |
| | § | |
| | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

## FINDINGS AND CONCLUSIONS

### A. STATEMENT OF THE CASE

Plaintiff Tamara Hendricks brings this action pursuant to Section 405(g) of the Social Security Act, Title 42 of the United States Code, for judicial review of a final decision of the Commissioner of Social Security denying her claim for disability insurance benefits under Title II of the Social Security Act. Hendricks applied for disability benefits on March 23, 2006, claiming disability commencing January 1, 2001. (Tr. 97). Her insured status expired December 31, 2005, (Tr. 11, 105), and disability must be established on or before that date for Hendricks to be entitled to disability insurance benefits. *See generally Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir.

1985); *Oldham v. Schweiker*, 660 F.2d 1078, 1080 n.1 (5th Cir. 1981).

After the Social Security Administration denied her application for benefits both initially and on reconsideration, Hendricks requested a hearing before an administrative law judge (ALJ). ALJ Jack Raines held a hearing on March 11, 2008, which Hendricks and her attorney attended. (Tr. 27). On May 29, 2008, the ALJ issued an unfavorable decision in which he found Hendricks was not disabled at any time between her alleged onset date and expiration of her insured status. (Tr. 11-20). The Appeals Council denied Hendricks's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 1).

B. STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d)(1)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. 20 C.F.R. § 404.1520. First, the claimant must not be presently working at any substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1527. Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). Third, disability will be found if the claimant's impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. *Id.* § 404.1520(d). Fourth, if disability cannot be found on the basis of a listing alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* § 404.1520(e).

And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. A finding at any point in the five-step process that a claimant is not disabled is conclusive and terminates the analysis. *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002).

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* Conflicts in the evidence are for the Commissioner and not the court to resolve. *Masterson*, 309 F.3d at 272. The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes the evidence weighs against the Commissioner's decision. *Id.*; *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000); *Hollis*, 837 F.2d at 1383.

C. ISSUES

Hendricks contends that the ALJ failed to properly weigh the medical opinions offered by treating psychiatrist Karen Price and should have recontacted Price for clarification or additional evidence before he declined to assigned controlling weight to Price's opinions.

D. ADMINISTRATIVE RECORD

1. Claimant History[1]

Hendricks was born June 20, 1960. She graduated high school and has worked as a secretary. (Tr. 114, 118).

Hendricks has a history of drug and alcohol abuse, (Tr. 221-76), and she enrolled in a rehabilitation program in August 2002. (Tr. 204, 262). Hendricks also received counseling and medication from Tarrant County Mental Health and Mental Retardation Services (MHMR) for depression. Her antidepressant was increased in July 2004, (Tr. 351), and the following month, she reported doing fine with her medications and having more energy and motivation. (Tr. 347). Her primary complaint at that visit was joint pain. In September 2004, Hendricks reported that she was doing very well. She rested in the afternoons and was doing some work for her mother. (Tr. 345). In October 2004, she was rated as mentally stable and her scheduled office visits were decreased to eight-week intervals instead of monthly. (Tr. 341, 343). MHMR staff again rated her as stable in May 2005, and in July and December, she reported that she was attending a support group three times a week. (Tr. 325, 330, 332).

---

[1] Hendricks challenges the ALJ's assessment only as it relates to the severity and work-related impact of her mental impairment. The court's review of the administrative record will be limited accordingly.

In February and March 2006, Hendricks reported increased depression, but she had not been taking her medication as prescribed. (Ttr. 319, 321). Her antidepressant was increased in August 2006 to address changes in her symptoms. (Tr. 478). In October 2006, Hendricks rated her depression as okay, but she was sleeping during the day. (Tr. 476). Her mood was more stable in November, and her depression was described as situational. (Tr. 474). During follow-up visits in 2007, Hendricks reported that she was doing well mentally, continued to attend weekly meetings with her support group, and was busy building a house. (Tr. 468-72). Hendricks and the MHMR staff also discussed discontinuing her antidepressant after Hendricks reported feeling better when she was not taking her medication. (Tr. 468, 471).

Price completed a medical evaluation interrogatory on September 18, 2007, in which she opined that Hendricks's health had been in decline for the past three years and that she could no longer perform full-time work. (Tr. 391-92). Price rated Hendricks as moderately impaired in her activities of daily living and social functioning. (Tr. 391). Price opined that Hendricks was markedly impaired in her ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with work stress. Price also found marked deficiencies in Hendricks's concentration, persistence, and pace. (Tr. 391-92).

2. Administrative Hearing

Hendricks testified that she felt overwhelmed emotionally and mentally incapable of working. (Tr. 34). She stayed home most of the time. She napped during the day, watched television, and played with her dogs. If she felt well enough, she took her daughter to school. (Tr. 34-35). Hendricks occasionally put away the laundry or cooked frozen meals, but often found it

difficult to bathe and needed assistance keeping up with her medications. (Tr. 36). She was able to drive short distances and visited her sister every week or two. (Tr. 37). Hendricks testified that she had been diagnosed with depression and bipolar disorder. (Tr. 41). She had difficulty making decisions and focusing on tasks, experienced crying spells, and was sometimes afraid to leave her house. (Tr. 42).

Hendricks's husband testified that his wife had attempted to work for him, but had been so overwhelmed that she had to leave in less than a day. (Tr. 44). He thought that most of her problems were emotional or mental, rather than physical. He described his wife as incapable of most productive activity, but she occasionally picked their daughter up from school or shopped for a few items at the neighborhood grocery store. (Tr. 45).

Vocational expert Shelly Eike testified that Hendricks's previous secretarial jobs were sedentary, skilled work. (Tr. 52). The ALJ asked her to assume that an individual of Hendricks's age, education, and vocational history had the following limitations:

> Lift and carry occasionally 20 pounds, lift and carry frequently no more than 10 pounds; stand and walk about 6 hours in an 8-hour day, and sit about 6 hours in an 8-hour day with the ability to alternate sitting or standing as needed to relieve pain or discomfort; no climbing of scaffolds, ropes, or ladders; occasional balancing; occasional kneeling; frequent crouching, crawling; occasional stooping; no manipulative limitations; no visual or communication limitations; no environmental limitations; be able to understand, remember, and carry out short, simple instructions in a simple and routine work environment; only occasional public contact; in a simple and routine work environment, could respond to usual work pressures appropriately and respond appropriately to changes in a work setting.

(Tr. 53). Eike testified that an individual with these limitations could not perform Hendricks's past relevant work, but there would be other jobs that could be performed. Examples included small

product assembler, small parts inspector, and sorter, which were all classified as light, unskilled work. (Tr. 54-55). Eike acknowledged that each of these jobs required a person to maintain regular attendance and stay on task during the work period. (Tr. 55).

3. ALJ Decision

The ALJ found that Hendricks had not engaged in substantial gainful activity during the relevant time period. (Tr. 12). He further found that her depression and hip pain constituted severe impairments, but her impairments did not meet or medically equal any listed impairment. (Tr. 12-13). In assessing Hendricks's residual functional capacity during the relevant time period, the ALJ found she had retained the ability to perform light work with the same exertional and non-exertional limitations that were presented to the vocational expert during the hearing. (Tr. 14). In particular, the ALJ found Hendricks was mentally capable of sustained work and could respond appropriately to supervision, co-workers, work pressures, and changes in work setting; understand, remember, and carry out only short, simple instructions; make judgments on simple work-related decisions; have only occasional contact with the public; and work within a simple and routine work environment. (Tr. 14). In reaching his decision, the ALJ considered Price's opinions, but found those opinions had very limited probative value. (Tr. 16-17).

The ALJ found that Hendricks was unable to perform any of her past relevant work, but based on the vocational expert's testimony, found that she could perform other work existing in significant numbers in the national economy. (Tr. 18-19). The ALJ concluded that Hendricks was not disabled during the adjudicated period of January 1, 2001, through December 31, 2005; therefore, she was not entitled to disability insurance benefits. (Tr. 20).

E. DISCUSSION

Hendricks contends that the ALJ failed to properly weigh the opinions of treating psychiatrist Karen Price. She further contends that the ALJ should have recontacted Price for clarification of her opinions or additional evidence before assigning little weight to those opinions. Generally, opinions, diagnoses, and medical evidence from a treating physician who is familiar with a claimant's impairments, treatments, and responses should be given great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994).

The ALJ assigns controlling weight to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The disability regulations also set forth factors to be considered in weighing medical opinions, which include the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. § 404.927(d); SOCIAL SECURITY RULING 96-2p, 96-5p. Absent competing firsthand medical evidence, the ALJ must consider each of these factors before declining to give any weight to the opinions of a treating physician. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). The determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 564;

*Greenspan*, 38 F.3d at 237.

Although the ALJ did not specify that he was addressing each of the relevant regulatory factors, his written decision addressed each of these factors in substance. The ALJ considered Price's statement and her opinions of marked limitation in most areas of Hendricks's mental functioning, but explained that these statements were not supported by the objective evidence reflected in Hendricks's MHMR treatment records. (Tr. 16). The ALJ reviewed the progress notes immediately preceding Price's 2007 statement and found that they did not demonstrate the level of impairment that Price indicated. The ALJ also noted that Hendricks had periods of noncompliance with her medications.[2] Hendricks contends that the ALJ's focus on her mental health treatment in 2007 proves that the ALJ failed to appreciate the longitudinal relationship that she had with Price, but it appears that the ALJ's review of Hendricks's mental status at or near the time that Price prepared her evaluation was intended to illustrate the incongruity between Price's opinion and the objective record. In addition, the ALJ found that Price had relied on statements from Hendricks's husband to support her opinion of a three-year decline in Hendricks's mental condition. The fact that Price provided her opinion well after Hendricks's insured status expired also persuaded the ALJ to assign less weight to Price's opinions. (Tr. 17). The ALJ adequately weighed Price's opinions and articulated good cause for his decision that these opinions had only limited probative value.[3]

---

[2] Hendricks challenges the ALJ's determination that she did not keep two of her MHMR appointments in August 2007, and attributes at least one of the missed appointments to the MHMR staff. The record supports the ALJ's finding. (Tr. 16, 649, 650).

[3] Hendricks also contends that the ALJ reached a decision that is unsupported by any other medical source; however, the ALJ gave substantial weight to the prior findings of the state agency medical consultants who evaluated Hendricks's claim initially and on reconsideration. (Tr. 14, 16).

Hendricks also urges that the ALJ had a duty to recontact Price to obtain additional evidence or clarification of the basis for her opinions. The ALJ has a duty to develop the facts fully and fairly, and if he does not satisfy this duty, his decision is not substantially justified. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir.2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995). If necessary, the ALJ should recontact a treating physician to resolve any doubts or gaps in the record. *Newton*, 209 F.3d at 457-58. *See also* 20 C.F.R. §§ 404.1512(e), 416.912(e); Social Security Ruling 96-5p. But the failure to request additional information from treating or examining sources is reversible error only if prejudicial. The claimant must establish prejudice by showing that, if the ALJ had developed the record, additional evidence would have been produced that might have led to a different decision. *Newton*, 209 F.3d at 458.

There is no indication that the ALJ found the evidence before him was an inconclusive or inadequate record on which to render a decision. Hendricks has not identified any relevant documentation missing from Price's records, nor does she explain what clarification Price could have provided if she had been recontacted that might have altered the ALJ's assessment of her opinions or Hendricks's residual functional capacity. The ALJ weighed the treating source's opinion in accordance with governing law, and Hendricks has failed to demonstrate that the ALJ's decision to assign very limited probative value to those opinions is unsupported by substantial evidence.

RECOMMENDATION

It is recommended that the decision of the Commissioner be affirmed.

NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until June 26, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until June 26, 2009, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED JUNE 5, 2009.

/s/ Charles Bleil
CHARLES BLEIL
UNITED STATES MAGISTRATE JUDGE